UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMTAB MANUFACTURING CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11 C 2692 |
| SICO INCORPORATED and SICO AMERICA, INC., | ) ) ) ) | Judge John W. Darrah |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On April 22, 2011, Plaintiff AmTab Manufacturing Corporation ("AmTab") filed a patent infringement suit against Defendants SICO Incorporated and SICO America, Inc. (collectively, "SICO"), alleging infringement of U.S. Patent No. 7,758,113 (the "'113 Patent"), which relates to support and safety technology for a seating apparatus. Before the Court is SICO's Motion to Modify the Protective Order and Add a Prosecution Bar. (Dkt. No. 31.)

On June 3, 2011, the parties submitted their Report on the Parties' Planning Meeting, which stated, "The parties acknowledge that the requirements of the Local Patent Rules apply to this case." (Dkt. No. 15 ¶ 3.) Local Patent Rule 1.4 for the Northern District of Illinois provides:

> The protective order found in LPR Appendix B shall be deemed to be in effect as of the date for each party's Initial Disclosures. Any party may move the Court to modify the Appendix B protective order for good cause. The filing of such a motion does not affect the requirement for or timing of any of the disclosures required by the LPR.

Since June 3, 2011, the parties produced documents under the protective order set forth in Appendix B of the Local Patent Rules (the "Protective Order"). The Protective Order provides for a two-tiered confidentiality designation: "Confidential" and "Highly-Confidential."

SICO filed its instant Motion on October 20, 2011, in which it seeks to add a third confidentiality designation to the Protective Order, entitled "Highly-Confidential – Patent Prosecution."[1] SICO seeks to impose a provision that "[a]ny attorney with access to SICO's development documents must not prosecute a patent application on behalf of AmTab for two years" after the conclusion of this case, or "[a]lternatively, at the choice of AmTab, two of its four attorneys [i.e., Eric H. Weimers and Jeffrey S. Dixon] in this lawsuit can have access to all other discovery from SICO, except its Highly-Confidential – Patent Bar development documents, and continue to prosecute AmTab's patents." (Mot. at 2.)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(G), a court may "for good cause" enter a protective order, "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in

---

[1] Specifically: SICO seeks to include in the "Highly Confidential – Patent Information" designation information that is "competitively sensitive, non-public, business or technical information, including current or future technical trade secrets, competitive analysis, research and development information, and plans more sensitive or strategic than Confidential or Highly Confidential information, the disclosure of which is likely to significantly harm SICO's competitive position." (Mot. at 4.) "Only those attorneys who certify they will not prosecute patents on behalf of AmTab or the named inventors for two years may have access to 'Highly Confidential – Patent Prosecution' information." (Mot. at 5.)

2

a specified way." "Although the Federal Circuit generally defers to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure, Federal Circuit law applies to discovery matters 'if the determination implicates an issue of substantive patent law.'" *Trading Tech. Intern., Inc. v. GL Consultants, Inc.*, No. 05 C 2140, 05 C 5164, 2011 WL 148252, at *1 (N.D. Ill. Jan. 18, 2011) (quoting *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010)) (*Deutsche Bank*). In *Deutsche Bank,* the Federal Circuit held, "the determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law." *Deutsche Bank*, 605 F.3d at 1377. Therefore, Federal Circuit law applies.

SICO, as the moving party, carries the burden of showing good cause for modification of the protective order. *Deutsche Bank*, 605 F.3d at 1378; *Trunswal Sys. Corp. v. Hydro-Air Eng'g. Inc.*, 813 F.3d 1207, 1209-10 (Fed. Cir. 1987). In patent cases, the test for modification of a protective order asks "whether there is an unacceptable risk of or opportunity for 'inadvertent disclosure' of confidential information." *Trading Technologies*, 2011 WL 148252, at *3 (quoting *Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991)).

The Federal Circuit first addressed the issue of restricting access to confidential information in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (*U.S. Steel*), in which the court held, "whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis." The risk of inadvertent disclosure turns on "the extent to which counsel is *involved in competitive decisionmaking with its client.*" *Deutsche Bank*, 605 F.3d at 1378

3

(quoting *U.S. Steel*, 730 F.2d at 1468) (emphasis added). A court must then balance the risk of disclosure against the resulting harm to the party that opposes the restriction. *Id.*

## ANALYSIS

SICO has not met its burden to show good cause for its proposed modification of the Protective Order. "Good cause is established by showing that the disclosure will cause a clearly defined and serious injury." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). To establish good cause under Rule 26(c), the moving party must present a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

SICO's arguments are vague and speculative, and SICO fails to identify a "clearly defined and serious injury." SICO bases its argument on its need to protect its "most sensitive forward-looking secret competition information" but does not identify any specific information that would cause it injury if disclosed.[2] (Reply at 6.) *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) ("Broad allegations of harm are not specific to establish good cause."). SICO also argues that "the content, direction, and scope of patent protection sought by AmTab will be informed by highly confidential product development information of SICO to SICO's substantial prejudice." (Mot. at 1-2.) SICO both fails to provide any particular and specific demonstrations of its "product development information" and does not expound on how SICO's product development

---

[2] To the extent SICO was hesitant to disclose examples of its "secret competition information" in public court documents, it could have done so under seal or provided such documents for *in camera* review.

4

information could be claimed by AmTab in a patent application. *See Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, No. 08 C 1215, 2010 WL 192250, at * (May 12, 2010) ("Defendants make only the general statement that, '[c]ertain technical information that [d]efendants have produced in this action . . . is proprietary.' Such a vague statement is not enough to warrant the unnecessary hardship that would result from the issuance of a patent prosecution bar) (citing *U.S. Steel*, 730 F.2d at 1468).

Moreover, the limitations SISCO proposes are unsupported by the record here, which does not demonstrate that AmTab's counsel is engaged in competitive decisionmaking with respect to AmTab. The Federal Circuit defines competitive decisionmaking as:

> [S]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*Id.* at 1378 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).

In *Deutsche Bank*, the Federal Circuit addressed the "precise question of when an attorney's activities in prosecuting patents on behalf of a client raises an unacceptable risk of inadvertent disclosure." *Deutsche Bank*, 605 F.3d at 1379. In relevant part, the court held:

> Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. Indeed, denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel*. The facts, not the category must inform the result. Our holding in *U.S. Steel* dictates that each case should be decided based on the specific facts involved therein.

*Id.* (internal citation and quotation omitted).

5

Furthermore, in *Deutsche Bank*, the court noted the broad range of patent prosecution duties of attorneys, noting that those who do not have substantial patent prosecution duties may be properly exempted from a prosecution bar. For attorneys that "are more substantially engaged with prosecution":

> [s]uch involvement may include obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution.

*Id.* Yet the court did not hold that attorneys with such duties *per se* fall under a patent prosecution bar, noting that "[f]or these attorneys, competitive decisionmaking *may* be a regular part of their representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant." *Id.* (emphasis added).

AmTab is represented by Ryndak & Suri LLP: four of Ryndak & Suri's attorneys have filed appearances on behalf of AmTab in this case – James Ryndak, Eric Weimers, Mark Suri, and Jeffrey Dixon. Ryndak & Suri LLP is AmTab's patent prosecution counsel. (Weimers Aff. ¶ 3.) But the focus of this debate is on Weimers and Dixon, who, SICO argues, "are involved in every aspect of AmTab's prosecution of its patents before the Patent Office." (Mot. at 4.) SICO does not seek to bar Ryndak or Suri from viewing materials that could be marked, "Highly Confidential – Patent Prosecution." (Reply at 6.)

Weimers is a partner, and Dixon is an associate at Ryndak & Suri LLP. (Weimers Aff. ¶ 1.) Weimers and Dixon represented the inventors of '113 Patent and prosecuted

6

their patent application in the Patent Office. In his affidavit, Weimers avers that new matters cannot be added to the '113 Patent (because the deadline has passed), and there are no patent applications pending that claim priority to the '113 Patent or are related to the '113 Patent. (*See* Weimers Aff. ¶¶ 6, 13.)

With respect to their patent prosecution duties for AmTab, Weimers's and Dixon's representation begins when AmTab provides disclosures to either Weimers or Dixon of an invention that AmTab has already created. (*Id.* ¶ 13.) Neither Weimers nor Dixon (or Ryndak & Suri LLP) creates an invention. (*Id.* ¶ 12.) Next, Weimers and Dixon provide their opinion to AmTab as to the broadest protection that is legally available for a new AmTab invention. (*Id.* ¶ 14.) Then, AmTab determines for itself whether that protection is worth pursuing, and if AmTab wishes, Weimers and Dixon prepare a patent application. (*Id.*)

In preparing the patent application, Weimers and Dixon:

> [D]etermine the scope of the broadest claims of any AmTab patent application based on what we believe to be the broadest scope of protection legally available for the invention, and the range of scope of any dependent claims is determined by incorporating further aspects of AmTab's invention that [they] believe further distinguish any relevant prior art, based on legal standards of patentability.

(*Id.* ¶ 15.) Importantly, neither Weimers nor Dixon, or any attorneys from Ryndak & Suri, are involved in AmTab's sales, marketing decisions or marketing meetings, product design, development decisions, scientific research, pricing of products or services, or production of products. (*Id.* ¶¶ 19-24.) Equally important, no Ryndak & Suri lawyers are AmTab employees, sit on AmTab's Board of Directors or are AmTab officers. (*Id.* ¶¶ 16-19.)

This record presents no indicia of competitive decisionmaking such as participation in a client's pricing or product design. In order to prevail, SICO "must rely on specific evidence – not an inflexible rule – that supports a finding of competitive decisionmaking." *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 765 (N.D. Ill. 2010); *see also U.S. Steel*, 730 F.2d at 1468 (requiring a showing of "factual circumstances surrounding each individual counsel's activities").

The record is clear that Weimers and Dixon engage in patent prosecution on behalf of AmTab and, in fact, engage in several of the duties noted above in *Deutsche Bank*. But in *Deutsche Bank*, the Federal Circuit also held that for attorneys who engage in substantial patent prosecution duties, "competitive decisionmaking *may* be a regular of their representation." *Id*. The record here clearly indicates that for Weimers and Dixon, it is not. Imposing a prosecution bar on Weimers and Dixon because they also prosecute patents "is the type of generalization counseled against" by the Federal Circuit. *Deutsche Bank*, 605 F.3d at 1379.

## CONCLUSION

For the reasons set forth above, SICO's Motion to Modify the Protective Order and Add a Prosecution Bar [31] is denied.

Date: January 19, 2001

JOHN W. DARRAH
United States District Court Judge