UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMTAB MANUFACTURING CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11 C 2692 ) |
| SICO INCORPORATED and SICO AMERICA INC., | ) Judge John W. Darrah ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, AmTab Manufacturing Corporation ("AmTab"), brought suit against Defendants, SICO Incorporated and SICO America Inc. (collectively, "SICO"), alleging infringement of AmTab's U.S. Patent No. 7,758,113 ("the '113 Patent"). On January 19, 2010, the Court held a claims-construction hearing, which included the argument of counsel for each party and the submissions of written summations by each party. The Court also considered the PowerPoint presentations presented by the parties at the hearing.

## BACKGROUND

The '113 Patent, entitled "Stool With A Noncircular Support," is a seating apparatus, which attaches to a mobile folding table. The seat post has a support mount attached to the seat and a seat post attached to the table. The seat post attaches to the support mount in a way that prevents the twisting of the seat relative to the seat post. The figure of the '113 Patent is set forth below:

The larger context of the invention – the mobile folding table – is commonly found in school cafeterias or gymnasiums where the seating can be collapsed to allow for the space to be used for other purposes. Several seats – or "stools with a noncircular support" – attach to the table, and the entire table set collapses.

Figures of the '113 Patent are set out below, arrows point to the seat post at issue:



The '113 Patent was filed on August 29, 2008, and issued on July 20, 2010. Claim 1 is the only independent claim. AmTab initially submitted U.S. Patent Application 12,231,166 ("the '166 application"). All claims were initially rejected by the Patent and Trademark Office ("PTO") because the prior art disclosed the applicant's claimed invention. The Examiner found the invention anticipated under section 102(b) because, among other things, U.S. Patent No. 4,208,072 ("Iskendarian") disclosed "an at least substantially vertical extent [] of the seat post having a noncircular cylindrical surface."

AmTab submitted an amended application, stating "claim 1 has been amended to clarify that the seat post is elongate and has a substantially uniform cross section . . . . This is a significant difference, as unlike the features of Iskendarian, a seat post according to the present invention may readily function as an elongate leg of a tubular table frame, for example, as illustrated in Figure 6." (Dkt. No. 34-2 (Joint Appendix or "JA") at 39.) The PTO allowed pending claims 1-6 and 10 as amended, which issued as '113 Patent claims 1-7. (*Id.* at 36.)

## LEGAL STANDARD

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970 (Fed. Cir. 1995) (*Markman*). Claim construction involves "determining the meaning and scope of the patent claims asserted to be infringed." *Id.* at 976. In construing the claim, the court does not "rewrite claims" but, rather, "give[s] effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999). The words of a claim are "generally given their ordinary and customary meaning"; that is, "the meaning that the term would have to a person of ordinary skill in

the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*Phillips*) (citations omitted.)

In interpreting claims, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification is "highly relevant to the claim construction analysis," is "usually . . . dispositive" and is "the single best guide to the meaning of a disputed term." *Id.* However, limitations from the specification describing embodiments must not be imported into a claim that does not recite those limitations. *Phillips*, 415 F.3d at 1323.

The court may also consider extrinsic evidence, such as expert testimony, dictionaries and learned treatises. *Markman*, 52 F.3d at 980. However, "[e]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.* at 981.

## ANALYSIS

The parties dispute the proper construction of three phrases in Claims 1 and one phrase in Claim 4, a dependent claim of the '113 Patent.

### CLAIM 1

Claim 1 of the '113 Patent states:

> A seating apparatus comprising
> a seat;
> a support mount fixed with respect to the seat, an at least substantially vertical extent of the support mount having a noncircular cylindrical surface; and
> an elongate seat post having a substantially uniform cross section mating with the support mount, an at least substantially vertical extent of the seat post having a noncircular cylindrical surface;

4

wherein one of the noncircular cylindrical surfaces is at least partially inserted into the other noncircular cylindrical surface to substantially prevent rotational movement of the seat with respect to the seat post, and
wherein the seat post is attached to a table.

*"An elongate seat post having a substantially uniform cross section mating with the support mount"*

The parties dispute the proper construction of the phrase, "An elongate seat post having a substantially uniform cross section mating with the support mount." The following are the parties' proposed constructions:

| SICO's Proposed Construction | AmTab's Proposed Construction |
| --- | --- |
| A seat post with an unvarying or nearly unvarying cross section for the entire length of the seat post mating with the seat mount | A long and thin seat post having an unvarying or nearly unvarying cross-section. "Nearly unvarying cross section" means a cross section that is sufficiently unvarying to permit the seat post to readily function as an elongate leg of a tubular frame |

SICO argues that its proposed construction gives the phrase its ordinary meaning, is consistent with the '113 Patent's specification, and is consistent with the prosecution history. AmTab responds that SICO's construction is redundant of the phrase itself and manipulates the prosecution history. AmTab further argues that its proposed construction is most consistent with the prosecution history. SICO responds that AmTab's construction ignores the claim language.

SICO's arguments with respect to the proper construction of this phrase are persuasive. The starting point in considering the intrinsic evidence is to "follow the general rule that terms in the claim are to be given their ordinary and accustomed meaning." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001)

(*Ecolab*). The phrase, "substantially uniform cross section" is properly construed as "unvarying or nearly unvarying cross section." In construing the phrase "substantially uniform" in *Ecolab*, the Federal Circuit stated:

> We begin with the phrase 'substantially uniform' itself. Ordinarily, 'uniform' means "always the same as in form or degree; unvarying." The American Heritage Collection Dictionary 1475 (3d ed.1997). Additionally, 'ordinarily . . . "substantially" means 'considerable in . . . extent,' American Heritage Dictionary Second College Edition 1213 (2d ed.1982), or 'largely but not wholly that which is specified,' Webster's Ninth New Collegiate Dictionary 1176 (9th ed. 1983).

*Id.* In *Ecolab*, the court noted the use of the word "'substantially' avoid[ed] the strict 100% nonuniformity boundary." *Id.* at 1367.

Here, the phrase "substantially uniform" modifies the term "cross section." *See id.* at 1366. Accordingly, the plain meaning of these words is "unvarying or nearly unvarying cross section." AmTab's argument that SICO's construction is an "exercise in redundancy" because the construction is redundant of the claim is not persuasive. SICO's construction is consistent with *Ecolab* and cases cited therein.

The remainder of SICO's construction – "for the entire length of the seat post mating with the seat mount" – gives the claim its ordinary and accustomed meaning. AmTab concedes SICO's argument that because "elongate" modifies "seat post," the seat post must be longer than it is wide. The elongate seat post "having" a substantially uniform cross section states the characteristic of the seat post: the length of the seat post has a substantially uniform cross section. By contrast, AmTab's proposed construction uses the phrase "cross section that is *sufficiently* unvarying." Thus, AmTab seeks a construction whereby only a portion of the seat post must have a "substantially uniform

6

cross section." AmTab's proposed construction here, however, has no support in the claim language. The concept of a "sufficiently unvarying" cross section is never used and cannot be found in the intrinsic history. Accordingly, SICO's proposed construction most closely gives the ordinary meaning to the claim.

SICO's argument that the prosecution history informs the meaning of the claim language and is consistent with SICO's construction is persuasive. The Patent Office initially rejected the '166 application as anticipated by the Iskendarian prior art reference. Notably, the initial claim did not contain the "substantially uniform cross section" limitation.

Drawings from Iskendarian are set out below:



The Examiner found Iskendarian invalidating because, among other elements, it taught "an at least substantially vertical extent [] of the seat post having a noncircular cylindrical surface." (JA at 48, 82.) The invention claimed in Iskendarian is a stackable stool that consists of two parts: a circular lower base and a circular upper base. (Resp.,

Ex. C, Reply at 6.) Because of the conical shape of the stool parts, the Iskendarian seat post had a non-uniform cross section.

AmTab amended claim 1 to include the phrase "an elongate seat post having a substantially uniform cross section mating with the support mount," stating:

> In particular claim 1 has been amended to clarify that the seat post is elongate and has a substantially uniform cross section.... This is a significant difference, as unlike the features of Iskendarian, a seat post according to the present invention may readily function as an elongate leg of a tubular table frame.

(JA at 35, 39.) The prosecution history demonstrates that the inclusion of the phrases "elongate" and "substantially uniform cross section" allowed the patent applicant to distinguish the seat post from the non-uniform seat post of Iskendarian. In addition, SICO argues that this statement, "while it uses the word 'tubular,' says nothing about the cross section of the seat post and only identifies the assembly to which the seat post/elongate leg is attached." (Br. at 13.)

AmTab responds that SICO misconstrues this prosecution history. AmTab concedes that the word "tubular" directly modifies "table frame" in the statement above. (Resp. at 9.) Rather, AmTab argues that in the context of the applicant's statement above, the word "'of' does not mean 'attached to' but rather indicate[s] the whole that includes the part denoted by the preceding word." (Resp. at 9 (citation omitted).) AmTab explains that the statements mean that the seat post is "*part of a whole* that is a tubular table frame, and as such, is itself tubular." (*Id.* (emphasis in original).) AmTab argues, "it would have been nonsensical for the '113 Patent applicant to attempt to

distinguish a seat post based on a feature, not of the seat post itself, but of something to which the seat post might be *attached*." (Resp. at 10 (emphasis in original).)

As discussed above, the prosecution history demonstrates otherwise – for example, in the use of phrases "elongate" and "substantially uniform cross section" to distinguish the '113 Patent from the seat post of Iskendarian. Contrary to AmTab's argument, the specifications in Figures 1-5 and 7 do not "explicitly depict variations of seat posts having a tubular form." (Resp. at 10.) There is no variation: each figure shows a seat post with a substantially uniform cross section for the entire length of that seat post.

Furthermore, AmTab argues for a means-plus-function limitation, arguing that the scope of the '113 Patent is defined by a functional limitation – to function as an elongate leg of a tubular table frame. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998) ("A means-plus-function limitation contemplated by 35 U.S.C. § 112, ¶ 6 (1994) recites a function to be performed rather than definite structure or materials for performing that function."). AmTab's argument is not persuasive. The '113 Patent is clearly directed at structure and there is no recitation of function in the claims of the '113 Patent.

In light of the claim language, the specifications, and the prosecution history, the Court construes the phrase "An elongate seat post having a substantially uniform cross section mating with the support mount" as "A seat post with an unvarying or nearly unvarying cross section for the entire length of the seat post mating with the seat mount."

*"An at least substantially vertical extent of the
seat post having a noncircular cylindrical surface"*

The parties dispute the proper construction of the phrase "An at least substantially vertical extent of the seat post having a noncircular cylindrical surface." The following are the parties' proposed constructions:

| SICO's Proposed Construction | AmTab's Proposed Construction |
|---|---|
| The portion of the seat post that is vertical or nearly vertical has a noncircular cylindrical shape for the entire length of that portion. | An end portion of the seat post that has an at least substantially vertical axis and that is sufficient for mating with the support mount includes a noncircular cylindrical surface. |

In arguing for their proposed constructions, the parties rely largely on the claim language; SICO also relies on the specifications. The dispute between the parties is whether, as SICO proposes, the entire seat post has a noncircular cylindrical shape or whether, as AmTab argues, only the "end portion" of the seat post that mates with the mount must have a noncircular cylindrical shape.

The word "extent" is not defined in the patent specification. Therefore, the word "extent" should be given its ordinary and plain meaning as a person having ordinary skill in the art would understand. *Phillips*, 415 F.3d at 1312-13. AmTab argues that the word "extent," as it is used in claim 1, means "end portion." AmTab reasons that the Merriam-Webster Collegiate Dictionary's ("Merriam-Webster") definition of "extent" is "the

10

point, degree, or limit to which something extends" and that "end" is listed as a synonym for "extent." (Resp. at 13-14.)

The Merriam-Webster definition of "extent" does not support AmTab's interpretation of "extent" as meaning "end." The definition in the Merriam-Webster Dictionary in its entirety reads as follows:

> a: the range over which, or limit to which something extends <the extent of her jurisdiction>
>
> b: the point, degree, or limit to which something extends: SCOPE <using talents to the greatest extent>
>
> c: the amount of space or surface that something occupies or the distance over which it extends: MAGNITUDE <the extent of the forest>

(Resp., Ex. D at 411.) The "point, degree, or limit to which something extends" is not logically construed as being synonymous with the "end," particularly in this context.

"Extent" in this context appears to serve as a synonym for "range," "amount," or "degree," – words that invoke a sense of area or distance. *See Scriptgen Pharmaceuticals, Inc. v. 3-Dimensional Pharmaceuticals, Inc.*, 79 F. Supp. 2d 409, 420-421 (D. Del. 1999) (holding that "extent" was synonymous with "amount" or "degree"). Further, it is clear, that as used in the phrase, "at least" modifies "substantially vertical extent," suggesting that some portion of the seat may be horizontal. Therefore, the proper construction of the claim requires, at a minimum, that the vertical extent (*e.g.*, range or distance) of the seat post is noncircular cylindrical in shape.

Next AmTab argues that the term "having" is an open-ended transition word; therefore, AmTab argues:

> even if SICO's interpretation of 'at least substantially vertical

> extent' as 'the portion of the seat post that is vertical or nearly
> vertical' were correct . . . the "meaning of the claim language
> nonetheless would be that the vertical portion of the seat post
> *has* (includes) a non-circular cylindrical surface, not that a non-
> circular cylindrical surface extends 'for the entire length of that
> portion.

(Resp. at 15.) SICO argues that because "having" is used as a transitional word, it is not an open term. (Reply at 10.)

The use of "having" as a transition phrase can make a claim open but does not create a presumption that the body of the claim is open. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001). The Federal Circuit has stated that the phrase "having" "must be interpreted in light of the specification to determine whether open or closed language is intended." Manual of Patent Examining Procedure § 2111.03 (8th ed. Rev. 2006).

The word "having" is used three times in independent claim 1 and does not appear elsewhere in the dependent claims of the '113 Patent: "having a substantially uniform cross section mating . . .", and the phrase at issue here, "having a noncircular cylindrical surface," twice. If the word "having" were construed as an open-transitional term, such as "including, but not limited to," the phrases "substantially uniform" and "noncircular cylindrical" would be stripped of any specific meaning. *See, e.g, Pieczenik v. Dyax Corp.*, 76 Fed. Appx. 293, 296 (Fed. Cir. 2003) (where "having" was used in the body of the claim, reading the term as open would read specificity out of claim). Furthermore, although the phrase "at least" does not immediately follow "having," it modifies "substantially vertical." This implies an intended closed interpretation. *See Bridgelux, Inc. v. Cree, Inc.*, No. 06-cv-240, 2008 WL 2325623, at *12 (E.D. Tex. June

3, 2008) ("This implies a closed interpretation because if 'having' were intended to be open ended, the qualifier 'at least' would be redundant."); *Enzo Biochem, Inc., et al. v. Applera Corp., et al.*, 04-cv-929, 2006 WL 2927500, at *8-9 (D. Conn. Oct. 12, 2006).

Therefore, the Court construes the phrase "An at least substantially vertical extent of the seat post having a noncircular cylindrical surface" as

"The portion of the seat post that is vertical or nearly vertical has a noncircular cylindrical shape for the entire length of that portion."

*"[A]t least partially inserted into the other noncircular cylindrical surface"*

The complete claim limitation is "wherein one of the noncircular cylindrical surfaces is *at least partially inserted into the other noncircular cylindrical surfaces to substantially prevent rotational movement of the seat with respect to the seat post.*" SICO contends that the plain and ordinary meaning should apply to the phrase "at least partially inserted into the other noncircular cylindrical surface." AmTab's proposed construction of the phrase is:

> Having a portion that extends into the interior of and overlaps a portion of the other noncircular cylindrical surface in the axial direction. For example, a portion of the noncircular cylindrical surface of the support mount extends into the interior of and overlaps a portion of the noncircular cylindrical surface of the inserted portion of the seat post in the axial direction.

AmTab fails to provide persuasive support for its proposed construction.

Rather, AmTab's proposed construction adds confusion to the claim language. *See Motorola, Inc. v. Nonin Med. Inc.*, 632 F. Supp. 2d 804, 816 (N.D. Ill. 2008) (declining to construe a term because its use in the claim was consistent with its ordinary meaning and proposed construction was confusing and problematic); *TQP Development,*

*LLC v. Barclays PLC*, 09-cv-88, 2011 WL1193010, * (E.D. Tex. March 28, 2011) ("Defendants' proposed construction tends to confuse, rather than clarify the claim language. Thus, the [c]ourt rejects Defendants' proposed construction."). AmTab's proposed construction does not find support in the intrinsic record, nor does AmTab make an effort to support its argument with references to the intrinsic evidence. The Court finds that the claim language is clear and does not require construction.

## CLAIM 4

Dependent claim 4 of the '113 Patent states: "A seating apparatus according to claim 1, wherein the aligned non-circular cylindrical surfaces have polygonal horizontal cross sections."

### *"[A]ligned non-circular cylindrical surfaces"*

SICO contends that the plain and ordinary meaning should apply to the phrase "[a]ligned non-circular cylindrical surfaces. AmTab's proposed construction is "the non-circular cylindrical surfaces of (a) the support mount and (b) an end portion of the seat post, in a mated configuration."

SICO argues that nothing in the language of claim 4 requires that the aligned non-circular cylindrical surfaces are "in a mated configuration." SICO also objects to the "end portion" phrase of AmTab's proposed construction, for the reasons detailed above.

AmTab responds that claim 4 depends from claim 1 and "must find antecedent basis in the noncircular cylindrical surfaces of claim 1, which expressly recite that one of the surfaces is "at least partially inserted into the other." (Resp. at 17.) Therefore, AmTab argues that "the dependency of claim 4 from claim 1 requires that the aligned

14

non-circular cylindrical surfaces be in a mated configuration." (*Id.*) AmTab furthermore argues that the term "align" is used elsewhere in the '113 Patent in reference to the seat post and support mount to indicate that the parts are mated.

AmTab seeks to re-write the claim. Nothing in the language of claim 4 or claim 1 requires that the aligned noncircular cylindrical surfaces be "in a mated configuration." As set forth above, nothing in the patent claims, the patent specification, or the prosecution history direct the claims to an "end portion of the seat." Accordingly, the Court finds that the claim language is clear and does not require construction.

## CONCLUSION

Therefore, the disputed terms in the '113 Patent are constructed as follows:

| Claim | Term | Construction |
|---|---|---|
| claim 1 | "An elongate seat post having a substantially uniform cross section mating with the support mount" | A seat post with an unvarying or nearly unvarying cross section for the entire length of the seat post mating with the seat mount. |
| claim 1 | "An at least substantially vertical extent of the seat post having a noncircular cylindrical surface" | The portion of the seat post that is vertical or nearly vertical has a noncircular cylindrical shape for the entire length of that portion. |
| claim 1 | [A]t least partially inserted into the other noncircular cylindrical surface | Plain and ordinary meaning |
| claim 4 | [A]ligned non-circular cylindrical surfaces | Plain and ordinary meaning |

Date: 3-29-12

*[signature]*
JOHN W. DARRAH
United States District Court Judge