

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMTAB MANUFACTURING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 2692 |
| | ) | |
| SICO INCORPORATED and SICO AMERICA INC., | ) | Judge John W. Darrah |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, AmTab Manufacturing Corporation ("AmTab"), brought suit against Defendants, SICO Incorporated and SICO America Inc. (collectively, "SICO"), alleging infringement of AmTab's U.S. Patent No. 7,758,113 ("the '113 Patent"). Before the Court are the parties' cross-motions for summary judgment. AmTab moves for summary judgment as to its Complaint, which claims infringement of the '113 Patent. SICO moves for summary judgment on Count I of its Counterclaim, which claims non-infringement.

## BACKGROUND[1]

AmTab is a manufacturer of mobile folding cafeteria tables, specialty tables, stages, and choral risers serving educational, hospitality, healthcare, banquet and

[1] The following statements are taken from the parties' statements of facts submitted in accordance with Local Rule 56.1. SICO has submitted a "reply" to AmTab's response to SICO's Local Rule 56.1(a)(3) statement of facts. The Local Rules do not permit a moving party to provide a reply to a response to the statement of facts submitted by the opposing party. Therefore, SICO's reply is not considered.

industrial markets. (AmTab's 56.1(a)(3) ¶ 1.) For over 50 years, SICO has been a leading, worldwide manufacturer of mobile folding products, including mobile folding tables, to help businesses maximize the efficient use of their space. (SICO's 56.1(a)(3) ¶ A.)

*Prosecution History*

The '113 Patent resulted from the prosecution of U.S. Patent Application 12/231,166 ("the '166 application"). (*Id.* ¶ 1.) As originally filed, the '166 application had nine claims. (*Id.* ¶ 2.) The only independent claim, claim 1, read as follows:

> A seating apparatus comprising
> a seat;
> a support mount fixed with respect to the seat, an at least substantially vertical extent of the support mount having a noncircular cylindrical surface; and
> a seat post mating with the support mount, an at least substantially vertical extent of the seat post having a noncircular cylindrical surface;
> wherein the noncircular cylindrical surface of the seat post aligns with the noncircular cylindrical surface of the support mount to substantially prevent rotational movement of the seat with respect to the seat post.

(*Id.*) All of the claims of the '166 application were initially rejected by the Patent and Trademark Office ("PTO") because the prior art disclosed the applicant's claimed invention. (*Id.* ¶ 3.) The examiner found the invention anticipated under section 102(b) because, among other things, U.S. Patent No. 2,208,072 to Iskendarian disclosed "an at least substantially vertical extent [] of the seat post having a noncircular cylindrical surface." (*Id.*)

The applicant amended claim 1; the following details the language that was added, which is underlined, and the words that were stricken, which are crossed out:

> A seating apparatus comprising
> a seat;
> a support mount fixed with respect to the seat, an at least substantially vertical extent of the support mount having a noncircular cylindrical surface; and
> an elongate seat post having a substantially uniform cross section mating with the support mount, an at least substantially vertical extent of the seat post having a noncircular cylindrical surface;
> wherein ~~the~~ one of the noncircular cylindrical surfaces ~~of the seat post aligns with~~ is at least partially inserted into the other noncircular cylindrical surface ~~of the support mount~~ to substantially prevent rotational movement of the seat with respect to the seat post, and wherein the seat post is attached to a table.

(*Id.* ¶ 4.) In the comments accompanying the amendment, the applicant stated:

> claim 1 has been amended to clarify that the seat post is elongate and has a substantially uniform cross section. Iskendarian, on the other hand, only discloses mating features with a tapered profile and non-uniform cross section. . . . This is a significant difference, as unlike the features of Iskendarian, a seat post according to the present invention may readily function as an elongate leg of a tubular table frame . . . .

(*Id.* ¶ 5.) The PTO allowed pending claims 1-6 and 10 as amended, which issued as the '113 Patent on July 20, 2010. (*Id.* ¶ 6.) As issued, the '113 Patent has seven claims. (*Id.* ¶ 7.) Claim 1 is the only independent claim; the remaining claims, claims 2 through 7, depend either on claim 1 or from another dependent claim depending on claim 1. (*Id.*)

Claim 1 of the '113 Patent reads:

> A seating apparatus comprising
> a seat;
> a support mount fixed with respect to the seat, an at least substantially vertical extent of the support mount having a

> noncircular cylindrical surface; and
> an elongate seat post having a substantially uniform cross section mating with the support mount, an at least substantially vertical extent of the seat post having a noncircular cylindrical surface;
> wherein one of the noncircular cylindrical surfaces is at least partially inserted into the other noncircular cylindrical surface to substantially prevent rotational movement of the seat with respect to the seat post, and
> wherein the seat post is attached to a table.

(*Id.* ¶ 8.)

*Accused SICO Products*

AmTab asserts that four of SICO's folding table products infringe all seven claims of the '113 Patent both literally and under the doctrine of equivalents: the Undergraduate table, the Graduate table, the Communicator table, and the TC-65 table. (*Id.* ¶ 9.) AmTab has provided examples of the accused SICO products, which consist of pictures printed from SICO's website. (Pl.'s 56.1(a)(3) ¶ 7 and Exs. B1-B4.)

All four of the accused SICO tables have seat posts that are not uniform in cross section for their entire length. (Def.'s 56.1(a)(3) ¶ 9.) The noncircular portion of the seat posts of all four accused tables is the same length. (*Id.* ¶ 10.) The accused Graduate, Communicator and TC-65 tables are directly supported by their seat posts, and the length of the circular portion of these seat posts varies, depending on the height of the table. (*Id.*) The accused Undergraduate table is not directly supported by its seat posts, and the length of the circular portion of its seat posts do not vary. (*Id.*) The cross section of the seat posts of each of the accused tables is not substantially uniform for the entire length of the seat post, and the vertical extent of the seat posts do not have a noncircular cylindrical shape for the entire length of that portion. (*Id.* ¶ 13.)

AmTab admits in its Final Infringement Contentions that the cross section of the seat posts of the accused products varies across the length of the seat posts, acknowledging that the upper portion is noncircular and the lower portion is circular. (*Id.* ¶ 14.) AmTab further admits in its Final Infringement Contentions that "the portion of the seat post that is vertical or nearly vertical does not have a noncircular cylindrical shape for the entire length of that portion." (*Id.*) AmTab also admits in its responses to Requests for Admission that the cross section of the seat posts of the accused product varies across its length, with one portion being noncircular cylindrical and another portion being circular. (*Id.* ¶ 15.) It further admits that the vertical extent of the seat post is not noncircular cylindrical in shape for the entire length of that portion. (*Id.* ¶ 15.) Despite its admissions regarding the cross sections of the seat posts of the accused tables, AmTab asserts that the accused tables have a nearly unvarying cross section "in that the overall cross-sectional dimension varies only slightly between the upper noncircular and lower circular portions." (*Id.* ¶ 16.)

Claim 1

The accused SICO tables include a seating assembly comprising a seat (the "SICO seat"). (AmTab's 56.1(a)(3) ¶ 8.) The accused SICO tables include a support mount fixed with respect to the seat (the "SICO support mount"). (*Id.* ¶ 9.) An at least substantially vertical extent of the SICO support mount has a noncircular cylindrical surface. (*Id.* ¶ 10.) The accused SICO tables include an elongate (long and thin) seat post (the "SICO seat post"). (*Id.* ¶ 11.)

The lower portion of the SICO seat post is shaped circular cylindrical and has an outer diameter of 1.000 inch, or that the difference in size is 0.098 inches from the centerline of the seat post to the outer edge of the circular portion. (*Id.* ¶ 13.) A portion of the SICO seat post mates with the support mount. (*Id.* ¶ 17.) Part of the seat post that is inserted into the support mount is noncircular cylindrical in shape. (*Id.* ¶ 19.) The SICO seat post is attached to a table. (*Id.* ¶ 21.)

Claim 2

The accused SICO tables include a surface of the seat post that is an exterior surface of the seat post. (*Id.* ¶ 22.) The noncircular cylindrical surface of the SICO support mount is an interior surface of the SICO support mount. (*Id.* ¶ 23.) An at least substantially vertical extent of the seat post is at least partially inserted into an at least substantially vertical extent of the support mount. (*Id.* ¶ 24.)

Claim 3

The seating apparatus of the Communicator and TC-65 SICO tables are stools. (*Id.* ¶ 25.) The SICO seat is composed at least substantially of plastic. (*Id.* ¶ 26.) The SICO seat post is composed at least substantially of metal. (*Id.* ¶ 27.)

Claims 4 and 5

The parties dispute whether the aligned noncircular cylindrical surfaces of the SICO seat post and SICO support mount have polygonal horizontal cross sections that are at least substantially square or the equivalent of at least substantially square. (*Id.* ¶ 28.)

Claim 6

The noncircular cylindrical surfaces of the SICO seat post and SICO support mount include aligned bolt holes. (*Id.* ¶ 29.) The accused SICO tables include a bolt extending through the aligned bolt holes to attach the SICO support mount to the SICO seat post. (*Id.* ¶ 30.)

Claim 7

For the TC-65 and Communicator tables, the SICO seat is supported substantially only by a single seat post mating with the SICO support mount. (*Id.* ¶ 31.)

*Court's Claim Construction*

On March 29, 2012, the court construed the disputed terms in the '113 Patent as follows:

| Claim | Term | Construction |
|---|---|---|
| claim 1 | "An elongate seat post having a substantially uniform cross section mating with the support mount" | A seat post with an unvarying or nearly unvarying cross section for the entire length of the seat post mating with the seat mount |
| claim 1 | "An at least substantially vertical extent of the seat post having a noncircular cylindrical surface" | The portion of the seat post that is vertical or nearly vertical has a noncircular cylindrical shape for the entire length of that portion |
| claim 1 | "[A]t least partially inserted into the other noncircular cylindrical surface" | Plain and ordinary meaning |
| claim 4 | "[A]ligned non-circular cylindrical surfaces" | Plain and ordinary meaning |

*AmTab Mfg. Corp. v. SICO Inc.*, No. 11-cv-2692, 2012 WL 1080482, at *8 (N.D. Ill. Mar. 29, 2012) (*AmTab*).

*Doctrine of Equivalents*

AmTab admits that it contends that the accused SICO tables perform the same function in the same way as the claimed invention to achieve the same result. (SICO's 56.1(a)(3) ¶ 18.)

In the prosecution of the '113 Patent, the applicant stated:

> [C]laim 1 has been amended to clarify that the seat post is elongate and has a substantially uniform cross section Iskendarian, on the other hand, only discloses mating features with a tapered profile and non-uniform cross sections, such as the cited features 20, 22, 24 and 26. This is a significant difference, as unlike the features of Iskendarian, a seat post according to the present invention may readily function as an elongate leg of a tubular table frame, for example, as illustrated in Figure 6.

(AmTab's 56.1(a)(3) ¶ 35.)

In the embodiment of the '113 Patent illustrated in Figure 6, the portion of the seat post that extends below the support mount functions only to attach to the table and to transmit a vertical load from the seat and the table to the floor or ground on which the table is supported. (*Id.* ¶ 36.) In the embodiment of the '113 Patent illustrated in Figure 6, the portion of the seat post that extends below the support mount functions as an elongate leg of a tubular table frame. (*Id.* ¶ 37.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

## ANALYSIS

### *AmTab's Motion for Summary Judgment*

AmTab seeks summary judgment as whether the accused SICO products infringe on AmTab's '113 Patent. AmTab argues that the accused products infringe on the '113 Patent under the doctrine of equivalents, or, "alternatively, literally, should the Court modify its claim construction as requested in AmTab's Motion for Reconsideration." (Mot. at 1.) This Court denied AmTab's Motion for Reconsideration on August 13, 2012, after the parties' briefing on the cross-motions for summary judgment completed. *See AmTab Mfg. Corp. v. SICO Inc.*, No. 11-cv-2692, 2012 WL 3486256, at *1 (N.D. Ill. Aug. 13, 2012) (*AmTab*). Based on this Court's construction of the '113 Patent, there is no literal infringement. Because the Court has not modified its claim

construction ruling, the only theory under which AmTab may claim infringement is the doctrine of equivalents.

"Under the doctrine of the equivalents, a product or process that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Duramed Pharms., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) (*Duramed*) (internal citation omitted). "[I]nfringement by equivalents is a question of fact." *Wavetronix LLC v. EIS Electronic Integrated Sys.*, 73 F.3d 1343, 1360 (Fed. Cir. 2009) (internal citation omitted).

"The 'essential inquiry' in any determination under the equivalents doctrine is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'" *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (alteration in original) (internal quotations omitted). Under the doctrine of equivalents, a party cannot "avoid [ ] infringement liability by making only insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Id.* (internal citation and quotations omitted). In determining whether an alleged equivalent includes only "insubstantial changes and substitutions," the Federal Circuit has applied the "function-way-result test . . . which asks whether an element of an accused product performs substantially the same function in substantially the same way to obtain substantially the same result as an element of the patented invention." *Id.*

AmTab argues that the accused SICO tables include a component that is equivalent or identical to each and every element of claims 1-7 of the '113 Patent. SICO responds that AmTab's infringement claim is precluded by two limitations on the doctrine of equivalents, prosecution history estoppel and claim vitiation. "[T]he doctrine of prosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent." *Duramed*, 644 F.3d at 1380 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 734 (2002)). "Application of prosecution history estoppel to limit the doctrine of equivalents presents a question of law." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005) (internal citation omitted).

As this Court previously explained in the Claim Construction Order, the PTO initially rejected the '166 application as anticipated by the Iskendarian prior art reference. *See AmTab*, 2012 WL 1080482, at *3. AmTab's initial claim did not contain the "substantially uniform cross section" limitation. *Id.* SICO argues that AmTab amended claim 1 to overcome the prior art rejection based on the Iskendarian reference by adding the limitation of "*an elongate* seat post *having a substantially uniform cross section* mating with the support mount, an at least substantially vertical extent of the seat post having a noncircular surface." (Resp. at 8 (amendments italicized).) AmTab responds that the addition of the limitation "having a substantially uniform cross section" was for purposes of clarification, not patentability.

AmTab's explanation of the amendment to claim 1 to the PTO, distinguishing Iskendarian, suggests otherwise:

> claim 1 has been amended to clarify that the seat post is elongate and has a substantially uniform cross section. Iskendarian, on the other hand, only discloses mating features with a tapered profile and ***non-uniform cross section. . . . This is a significant difference***, as unlike the features of Iskendarian, a seat post according to the present invention may readily function as an elongate leg of a tubular table frame . . . .

(Resp. at 8 (emphasis in original).) Regardless of what AmTab now argues, AmTab, as patentee, is "bound by arguments actually made during prosecution." *Greenliant Sys., Inc. v. Xicor LLC*, No. 2011-1514, 2012 WL 3590829, at *9 (Fed. Cir. Aug. 22, 2012) (*Greenliant Sys.*).

As this Court previously held, "the prosecution history demonstrates that the inclusion of the phrases 'elongate' and 'substantially uniform cross section' allowed the patent applicant to distinguish the seat post from the non-uniform seat post of Iskendarian." *AmTab*, 2012 WL 1080482, at *4. AmTab added and emphasized that the invention has a "substantially uniform cross section" for the entire seat post but now argues that the SICO seat posts – with non-uniform cross sections – are equivalent.

However, here, prosecution history estoppel bars AmTab from asserting that the accused SICO seat post that is not entirely noncircular cylindrical in shape is equivalent to the claim limitation that requires the seat post to be noncircular cylindrical in shape for its entire length. The "prosecution history disclaimer [is] a doctrine that serves the same policy as the recapture rule, i.e., preventing a patentee from encroaching back into territory that had previously been committed to the public." *Greenliant Sys.*, 2012 WL 3590829, at *9 (internal quotations and citation omitted). AmTab narrowed its claim before the PTO and is now prevented from recapturing through equivalents.

Prosecution history estoppel bars AmTab's infringement claim under the doctrine of equivalents as to claim 1. Claims 2-7 are dependent claims of claim 1. (*See* SICO's 56.1(a)(3) ¶ 7.) Therefore, because claims 2-7 are dependent on claim 1, SICO does not infringe on those claims as a matter of law. *See Teledyne McCormick Selph v. United States*, 558 F.2d 1000, 1004 (Ct. Cl. 1977) ("It . . . has long been established that a dependent claim . . . cannot be infringed unless the accused device is also covered by the independent claim."). Furthermore, "[b]ecause prosecution history estoppel bars [AmTab] from asserting the doctrine of equivalents on claim [1], the Court need not address [SICO's] arguments regarding vitiation of this claim element." *Tritek Tech., Inc. v. United States*, 67 Fed. Cl. 735, 759 (Ct. Cl. 2005).

If claim vitiation was considered, SICO's argument that the claim vitiation doctrine bars AmTab from asserting the doctrine of equivalents is persuasive. "[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (*Freedman*). Claim 1 requires the accused products to have structures equivalent to: (1) a seat post with a "substantially uniform cross section," defined as a seat post with an unvarying or nearly unvarying cross section for the entire length of the post" and (2) "at least substantially vertical extent of the seat post having a noncircular cylindrical surface," defined as a "noncircular cylindrical shape for the entire length of that portion."

AmTab "admits that the Accused SICO Tables have seat posts that are not perfectly uniform in cross section for their entire length" and "that the upper portion of

the seat posts is noncircular, and that the lower portion of the seat posts is circular." (Dkt. No. 68 ¶ 10.) Accordingly, if the Court were to find that the accused SICO products were equivalent of the two claim limitations, these two claim limitations would be vitiated. *See, e.g., Freedman*, 420 F.3d at 1362 ("In the instant case, we think the district court's finding of infringement under the doctrine of equivalents had the effect of entirely vitiating the 'slidably mounted' limitation.").

## CONCLUSION

For the foregoing reasons, AmTab cannot prove literal infringement and has not demonstrated infringement under the doctrine of equivalents as a matter of law; therefore, AmTab's Motion for Summary Judgment of Infringement is denied. SICO's Motion for Summary Judgment of Non-Infringement is granted, and SICO's counterclaims for a declaration of invalidity of the '113 Patent and tortious interference are dismissed with prejudice.

Date: 9-25-12

JOHN W. DARRAH
United States District Court Judge